UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| ERICKA BLAIR, | ) |
| *Plaintiff*, | ) ) ) |
| vs. | ) ) No. 1:20-cv-0888-JMS-MPB |
| GREEN SQUARE COMPANY LLC and JOEY M. YOUNGER, | ) ) ) ) |
| *Defendants*. | ) ) |

**ORDER**

Plaintiff Ericka Blair filed this action against Defendants Green Square Company LLC ("Green Square") and its owner, Joey M. Younger, alleging violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq*. [Filing No. 9.] Presently pending before the Court is Ms. Blair's Motion for Default Judgment against both Defendants, [Filing No. 25], which is ripe for the Court's decision.

**I.**
**LEGAL STANDARD**

Default is a "two-step process" that is "clearly outlined" in Rule 55(a) and 55(b) of the Federal Rules of Civil Procedure. *VLM Food Trading Int'l, Inc. v. Ill. Trading Co.*, 811 F.3d 247, 255 (7th Cir. 2016). The first step is the entry of default, the consequence of which is that the well-pleaded allegations in the complaint concerning liability are taken as true. *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)). Once the default is established at the first step, the plaintiff must then obtain entry of a default judgment, which requires her to "establish [her] entitlement to the relief [s]he seeks." *VLM Food Trading Int'l,* 811 F.3d at 255 (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir.

2004)). Default judgment is only appropriate if the allegations in the complaint, along with the other evidence submitted, establish a cognizable claim for relief. *See Franko v. All About Travel Inc.*, 2014 WL 2803987, at *1 (N.D. Ind. June 19, 2014) ("Default judgment is appropriate only if the well-pleaded allegations of the complaint are sufficient to establish a legal claim."); *Holland v. Cerberus Capital Mgmt.*, 2014 WL 6473479, at *11 (N.D. Ind. Nov. 18, 2014) ("Precedent supports the principle that default judgment is only appropriate if the well-pleaded allegations, along with any evidence submitted to the court, are sufficient to establish a legal claim."); *In re Wolf*, 595 B.R. 735, 754 (Bankr. N.D. Ill. 2018) ("The Plaintiff must, however, establish that the well-pleaded facts found in the complaint, if taken as true, amount to a legally cognizable claim for relief upon which a judgment may be entered." (citing *Nishimatsu Const. Co. v. Houston Nat. Bank*, 515 F.2d 1200, 1206 (5th Cir. 1975); *Thomson v. Wooster*, 114 U.S. 104 (1885))).

## II.
### BACKGROUND

On March 19, 2020, Ms. Blair filed her initial Complaint against Green Square only, alleging that Green Square violated various provisions of the FDCPA by placing several calls to her telephone in an attempt to collect a consumer debt that Ms. Blair allegedly owed. [Filing No. 1.] After serving the Complaint on Green Square, Ms. Blair filed a Motion for Clerk's Entry of Default on April 30, 2020. [Filing No. 8.] While that motion was pending, Ms. Blair filed an Amended Complaint, adding Mr. Younger as a Defendant. [Filing No. 9.] On May 27, 2020, the Court denied Ms. Blair's Motion for Clerk's Entry of Default as moot, reasoning that the Amended Complaint had become the operative complaint in this case and Defendants' time to respond to the Amended Complaint had not yet expired. [Filing No. 14.]

In the Amended Complaint, Ms. Blair alleges that Green Square is a debt collection company and Mr. Younger "is an owner, officer, director and/or partner of Green Square and

regularly directs the business practices of the company." [Filing No. 9 at 2.] She further alleges that, in January 2020, Green Square began placing calls to her telephone in an attempt to collect a consumer debt she allegedly owed. [Filing No. 9 at 3.] Ms. Blair asserts that "[o]n at least one occasion," she answered a call and spoke with one of Green Square's employees, who falsely represented that Green Square is a "mediation company." [Filing No. 9 at 4.] During that same conversation, Ms. Blair alleges, the employee "threatened to take [Ms. Blair] to court if she did not enter into a payment plan with Green Square Company." [Filing No. 9 at 4.] In addition, Ms. Blair alleges that Green Square employees left the following voicemail messages on her telephone:

- "This is a formal notification solely intended for Ericka Blair. This is the offices of Green Square Services calling in regards to your (unintelligible) of banking information with this office. We strongly suggest you return this call immediately before this matter is outsourced for final action against you. You may contact our office directly, 888-591-9207. Thank you and have a great day. 5-1-2-2-2-6-5-2."

- "This message is only intended for Ericka Blair. This is Christina Maddox contacting you in reference to the civil grievance filed against your name as well as your social ending in 0611 due to the bounced check authorized from your account. You provided a MasterCard ending in 9935 to set a voluntary out-of-court arrangement. However, the payment you authorized of $100 came back insufficient funds and carrying a $35 insufficient fee and is currently being investigated as an attempt to defraud our company. To avoid any further proceedings for wage garnishment through Marion County, you or your attorney can contact our office no later than 5 PM at 844-802-1310. Again that is 844-802-1310. Good luck."

- "This is a formal notification solely intended for Ericka Blair. This is the offices of Green Square Services calling regarding your claim which is currently in imminent default. This matter is being scheduled to be recalled beyond this point at which time our client will pursue and likely be awarded the appropriate release. You may contact the office directly at 888-608-5122. As always, your complete cooperation is appreciated. 5-1-2-2-2-6-5-2."

[Filing No. 9 at 4.] Ms. Blair alleges that Green Square's employees know or should know that the FDCPA requires them to disclose their identity and disclose that the communication is from

a debt collector and any information obtained will be used to collect a debt. [Filing No. 9 at 5.] In addition, Ms. Blair asserts that Green Square has not taken any legal action against her. [Filing No. 9 at 5.]

As to Mr. Younger, Ms. Blair alleges that he "was responsible for setting the policies and procedures related to the collection practices of Green Square Company's employees and directed them to specifically act in the manner described" in the Amended Complaint. [Filing No. 9 at 5.] Specifically, Ms. Blair alleges that Mr. Younger: (1) created the policies and procedures Green Square used to collect debts; (2) managed or otherwise controlled Green Square's daily operations; (3) drafted, created, approved, and ratified the scripts Green Square employees use to collect debts; (4) oversaw employees' application of the collection policies and procedures; (5) ratified the unlawful debt collection practices and procedures; and (6) had knowledge of, approved, participated in, ratified, and benefitted financially from Green Square's unlawful debt collection practices. [Filing No. 9 at 5-6.] Ms. Blair alleges that Green Square and Mr. Younger knew that the representations made to her were false, deceptive, and misleading. [Filing No. 9 at 6.]

Based on these allegations, Ms. Blair asserts that Defendants violated the following provisions of the FDCPA:

- § 1692d(6) by leaving a voicemail message without disclosing that the communication was from Green Square;

- § 1692e(4) by threatening to garnish her wages when they could not lawfully do so;

- § 1692e(5) by threatening to take legal action against her when they did not intend to do so;

- § 1692e(10) by "deceptively insinuate[ing]" that she needed to retain an attorney when no legal action was pending;

- § 1692e(11) by leaving voicemail messages without disclosing that the communications were from a debt collector attempting to collect a debt;

- § 1692e(14) by leaving a voicemail message identifying itself as "Green Square Services," rather than using its true name; and

- § 1692f by using unfair or unconscionable means to attempt to collect a debt.

[Filing No. 9 at 6-8.] Ms. Blair seeks $1,000 in statutory damages pursuant to § 1692k, plus reasonable attorney's fees and costs. [Filing No. 9 at 8.]

On June 18, 2020, Ms. Blair filed a Motion for Clerk's Entry of Default as to both Defendants, [Filing No. 16], which the Court denied without prejudice, concluding that Ms. Blair had not demonstrated that Mr. Younger had been properly served, [Filing No. 17].

On July 29, 2020, Ms. Blair filed a Motion for Clerk's Entry of Default as to Green Square only. [Filing No. 18.] The Clerk entered default as to Green Square on August 27, 2020. [Filing No. 22.] On September 8, 2020, Ms. Blair filed a Motion for Clerk's Entry of Default as to Mr. Younger. [Filing No. 23.] The Clerk entered default as to Mr. Younger on September 28, 2020. [Filing No. 24.] On October 22, 2020, Ms. Blair filed the present Motion for Default Judgment against both Defendants, [Filing No. 25], which is ripe for the Court's decision.

## III.
### DISCUSSION

### A. Liability

The allegations contained in the Amended Complaint, accepted as true, are sufficient to demonstrate that Green Square violated the FDCPA by calling Ms. Blair's telephone. Specifically, the allegations establish that Green Square violated §§ 1692d(6), 1692e(4)-(5), 1692e(10)-(11), 1692e (14), and 1692f in the ways stated in the Amended Complaint. Accordingly, Ms. Blair's Motion for Default Judgment is **GRANTED** as to Green Square.

5

However, the Seventh Circuit Court of Appeals has expressly held that the FDCPA "does not contemplate personal liability for shareholders or employees of debt collection companies who act on behalf of those companies, except perhaps in limited instances where the corporate veil is pierced." *Pettit v. Retrieval Masters Creditor Bureau, Inc.*, 211 F.3d 1057, 1059 (7th Cir. 2000) (citing *White v. Goodman*, 200 F.3d 1016, 1019 (7th Cir. 2000)). Instead, "the FDCPA has utilized the principle of vicarious liability" and "the debt collection company answers for its employees' violations of the statute." *Pettit*, 211 F.3d at 1059 (citations omitted). This is true regardless of whether the individual "exercise[s] extensive control over" the day-to-day operations of the company. *Id.*

In the Amended Complaint, Ms. Blair cites various cases from federal district and appellate courts outside the Seventh Circuit in support of her contentions that "[e]mployees can be held personally liable under the FDCPA" and "[m]ost courts that have addressed the issue have held that the corporate structure does not insulate shareholders, officers, or directors from personal liability under the FDCPA." [Filing No. 9 at 3.] Although it may be true that some courts—perhaps even a majority of courts—allow personal employee liability under the FDCPA, six of the cases cited by Ms. Blair expressly acknowledge that the Seventh Circuit takes the opposite approach. *See Kistner v. Law Offices of Michael P. Margelefsky, LLC*, 518 F.3d 433, 436 (6th Cir. 2008) ("On one side of the split [of authority], the Seventh Circuit and a few district courts have ruled that a shareholder, officer, or employee of a corporate debt collector may not be held personally liable without meeting the requirements necessary to pierce the corporate veil."); *Robinson v. Managed Accounts Receivables Corp.*, 654 F. Supp. 2d 1051, 1059 (C.D. Cal. 2009) ("On the other hand, the Seventh Circuit has come down the opposite way, holding that employees cannot be held personally liable under the FDCPA unless the plaintiff can pierce the corporate

6

veil."); *Schwarm v. Craighead*, 552 F. Supp. 2d 1056, 1071 (E.D. Cal. 2008) ("On the other hand, the Seventh Circuit has held that, regardless of an individual's personal involvement with the corporation's debt collecting activities, a shareholder or officer of a debt collecting corporation cannot be personally liable unless the plaintiff pierces the corporate veil."); *del Campo v. Kennedy*, 491 F. Supp. 2d 891, 903 (N.D. Cal. 2006) ("[O]nly the Seventh Circuit has found[] that an individual cannot be held liable for violations of FDCPA unless the corporate veil has been pierced."); *Brumbelow v. Law Offices of Bennett & Deloney, P.C.*, 372 F. Supp. 2d 615, 618 (D. Utah 2005) ("Some courts, most notably the Seventh Circuit Court of Appeals, have held that a shareholder, officer, or employee of a corporate debt collector may not be held personally liable without piercing the corporate veil."); *Albanese v. Portnoff Law Assocs., Ltd.*, 301 F. Supp. 2d 389, 400 (E.D. Pa. 2004) ("Defendants rely on *Pettit v. Retrieval Masters Creditors Bureau, Inc.*, in which the Seventh Circuit held that FDCPA violations were governed by respondeat superior liability."). Regardless of the position taken by other courts that encounter this issue, this Court is bound by the Seventh Circuit's decisions in *Pettit* and *White*. Ms. Blair has not made any argument suggesting that the corporate veil should be pierced in these circumstances, and therefore the Court must conclude that Mr. Younger cannot be held individually liable in this case. Because the allegations in the Amended Complaint do not state a cognizable claim against Mr. Younger, Ms. Blair's Motion for Default Judgment is **DENIED** as to Mr. Younger.[1] All claims against Mr. Younger are **DISMISSED with prejudice**.

---

[1] The Court cautions Ms. Blair's counsel that the Seventh Circuit has stated that "FDCPA suits against the owners of a debt collection company who are not otherwise debt collectors are frivolous and might well warrant sanctions." *Pettit*, 211 F.3d at 1059. Although no sanctions will be imposed in this case, counsel's disregard of binding Seventh Circuit precedent—especially precedent that was explicitly discussed in six of the cases counsel cited in the Amended Complaint—is concerning and potentially inconsistent with the duties imposed on counsel by Federal Rule of Civil Procedure 11 and the applicable rules of professional conduct.

7

### B. Damages

"[W]hile a default judgment conclusively establishes liability, the victor must still prove up damages." *Domanus v. Lewicki*, 742 F.3d 290, 303 (7th Cir. 2014). Accordingly, a district court must "conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *e360 Insight v. The Spamhaus Project*, 500 F.3d 594, 602 (7th Cir. 2007) (quoting *In re Catt*, 368 F.3d 789, 793 (7th Cir. 2004)). Generally, "judgment by default may not be entered without a hearing on damages unless 'the amount claimed is liquidated or capable of ascertainment from definite figures contained in the documentary evidence or in detailed affidavits.'" *e360 Insight*, 500 F.3d at 602 (quoting *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).

The FDCPA provides for recovery of actual damages plus "such additional damages as the court may allow, but not exceeding $1,000." 15 U.S.C. § 1692k(a). "The FDCPA does not require proof of actual damages as a precursor to the recovery of statutory damages." *Keele v. Wexler*, 149 F.3d 589, 593 (7th Cir. 1998). In determining the appropriate amount of statutory damages, courts must consider: (1) the frequency and persistence of non-compliance by the debt collector; (2) the nature of such non-compliance; and (3) the extent to which the non-compliance was intentional. 15 U.S.C. § 1692k(b)(1); *see also Muha v. Encore Receivable Mgmt.*, Inc., 558 F.3d 623, 627 (7th Cir. 2009). "[I]t is within the district court's discretion to decide whether and if so how much to award, up to the $1,000 ceiling." *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997).

Ms. Blair does not seek actual damages but asks the Court to award the full $1,000 in statutory damages. The Court concludes that a hearing is not necessary to determine the appropriate amount of statutory damages in this case. *See id.* (stating that, regarding statutory damages, [a]ll that is required is proof that the statute was violated"); *Martin v. Fin. Recovery Ctr.,*

8

*Inc.*, 2010 WL 4318830, at *2 (N.D. Ind. Oct. 20, 2010) ("The $1,000 in statutory damages that [the plaintiff] seeks does not require any documentary proof."). Furthermore, given that Green Square placed numerous calls to Ms. Blair, violated seven different provisions of the FDCPA, and made representations that its employees likely knew were false, such as those regarding the identity and nature of the company, the Court in its discretion awards Ms. Blair the full **$1,000 in statutory damages**. *See Martin*, 2010 WL 4318830, at *2 (awarding $1,000 where the defendant "violated multiple provisions of the FDCPA" and "the nature of the defendant's non-compliance, particularly falsely identifying itself as a law firm, strongly suggests that the non-compliance was intentional"); *Suleski v. Bryant Lafayette & Assocs.*, 2010 WL 1904968, at *2 (E.D. Wis. May 10, 2010) (awarding $1,000 where defendant's phone calls "were both frequent and persistent, and [defendant] improperly threatened legal action").

### C. Attorney's Fees and Costs

Plaintiffs who succeed on their FDCPA claims are entitled to recover "the costs of the action, together with a reasonable attorney's fee as determined by the court." 15 U.S.C. § 1692k(a)(3). In determining what constitutes a reasonable fee, a district court should follow "the methodology traditionally employed in determining appropriate fees under 42 U.S.C. § 1988." *Zagorski v. Midwest Billing Servs., Inc.*, 128 F.3d 1164, 1166 (7th Cir. 1997). Under this approach, the first step is to calculate the lodestar, which is the product of the number of hours the attorney reasonably spent on the case multiplied by a reasonable hourly rate. *Perdue v. Kenny A. ex rel. Winn*, 559 U.S. 542, 551-53 (2010). "The party seeking the fee award bears the burden of proving the reasonableness of the hours worked and the hourly rates claimed." *Spegon v. Catholic Bishop of Chicago*, 175 F.3d 544, 550 (7th Cir. 1999). "[T]he district court has an obligation to 'exclude from this initial fee calculation hours that were not "reasonably expended"' on the litigation." *Id.*

9

(quoting *Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983)); *see also People Who Care v. Rockford Bd. of Educ., Sch. Dist. No. 205*, 90 F.3d 1307, 1314 (7th Cir. 1996) ("An attorney's hours are subject to the scrutiny of the court and unreasonable hours should not be compensated."). In addition, a reasonable hourly rate is "one that is 'derived from the market rate for the services rendered.'" *Pickett v. Sheridan Health Care Ctr.*, 664 F.3d 632, 640 (7th Cir. 2011) (quoting *Denius v. Dunlap*, 330 F.3d 919, 930 (7th Cir. 2003)). Similarly, "[a]ny party seeking an award of costs carries the burden of showing that the requested costs were necessarily incurred and reasonable." *Trustees of Chi. Plastering Inst. Pension Tr. v. Cork Plastering Co.*, 570 F.3d 890, 906 (7th Cir. 2009).

Ms. Blair seeks a total of $4,729.90 in attorney's fees, comprised of 11.30 hours of work by counsel Michael S. Agruss compensated at a rate of $367.00 per hour plus 4.7 hours of work by paralegal Jackie Laino compensated at a rate of $124.00 per hour. [Filing No. 25-1 at 8-9.] Based on the Court's understanding of reasonable hourly rates in this community and the declaration and supporting documentation submitted by Mr. Agruss, [Filing No. 25-1 at 11-31], the Court finds that these hourly rates are reasonable. However, the Court cannot conclude that the requested number of hours is reasonable because some of the time was spent on a claim against Mr. Younger that is not legally cognizable for the reasons stated above. Specifically, despite the existence of binding precedent instructing that employees cannot be held personally liable under the FDCPA in this Circuit, Mr. Agruss filed an Amended Complaint adding Mr. Younger as a Defendant, which mooted the motion for clerk's entry of default that was pending.[2] Mr. Agruss then had to expend time and resources re-serving Green Square, serving Mr. Younger, and filing

---

[2] The Court also observes that, instead of withdrawing the mooted motion, Mr. Agruss left the Court to expend its resources in ruling on the motion.

10

additional motions for clerk's entry of default. Notably, this is not a case in which the plaintiff erroneously added an improper defendant at the outset; rather, after the action was already pending—and, presumably, after reviewing the cases cited in the Amended Complaint—Mr. Agruss wasted time and resources by adding a Defendant who cannot be sued and restarting the litigation at the service step. Accordingly, the Court deducts the following entries from Mr. Agruss' requested hours:

| Date | Task | Hours |
|---|---|---|
| May 8, 2020 | Prepared First Amended FDCPA Complaint against Green Square Company LLC and Joey M. Younger | 0.50 |
| Sept. 28, 2020 | Confirmed default entered as to Joey M. Younger | 0.10 |
| | **Total** | **0.60** |

The Court also subtracts the following entries from Ms. Laino's requested hours:

| Date | Task | Hours |
|---|---|---|
| May 11, 2020 | E-filed First Amended Complaint | 0.20 |
| May 13, 2020 | Requested alias summons as to Green Square Company LLC | 0.20 |
| June 8, 2020 | Confirmed service of First Amended Complaint as to Joey M. Younger | 0.10 |
| June 18, 2020 | Prepared and filed request for Clerk's Entry of Default as to Defendants | 0.10 |
| Aug. 12, 2020 | Requested alias summons as to Joey M. Younger | 0.10 |
| Aug. 13, 2020 | Hired process server to serve alias summons as to Joey M. Younger | 0.20 |
| Aug. 17, 2020 | Hired process server to re-serve alias summons as to Joey M. Younger at proper address | 0.20 |
| Sept. 8, 2020 | Prepared and filed request for Clerk's Entry of Default as to Joey M. Younger only (.2); emailed filed Clerk's Entry of Default to Joey M. Younger (.2) | 0.40 |
| | **Total** | **1.5** |

With these adjustments, a reasonable number of hours is 10.7 for Mr. Agruss and 3.2 for Ms. Laino. Multiplying these hours by the reasonable hourly rates identified above yields a fee of $3,926.90 for Mr. Agruss (10.7 hours x $367 per hour) and $396.80 for Ms. Laino (3.2 hours x $124 per hour). Thus, Ms. Blair is awarded a total of **$4,323.70 in attorney's fees**.

11

As to costs, Ms. Blair seeks to recover a total of $687.80, which is comprised of the $400.00 filing fee, $58.90 in costs associated with serving the initial Complaint, and $228.90 costs associated with serving the Amended Complaint.  [Filing No. 25-1 at 8; Filing No. 25-1 at 22.] The Court concludes that the $400.00 filing fee was reasonable and necessary.  The same is true for the $58.90 cost of serving the initial Complaint on Green Square.  However, because the Court has already concluded that the decision to file an Amended Complaint was not reasonable, the $228.90 in costs incurred in re-serving Green Square and serving Mr. Younger are not reasonable, and Ms. Blair cannot recover them.  Thus, Ms. Blair is awarded a total of **$458.90 in costs**.

## IV.
### CONCLUSION

Based on the foregoing, Ms. Blair's Motion for Default Judgment, [25], is **GRANTED IN PART and DENIED IN PART** as follows:

- The Motion is **GRANTED** as to Green Square; and
- The Motion is **DENIED** as to Mr. Younger.

The Court enters **DEFAULT JUDGMENT** pursuant to Federal Rule of Civil Procedure 55(b) in favor of Ms. Blair and against Green Square in the amount of $1,000 in damages, $4,323.70 in attorney's fees, and $458.90 in costs, for a total of $5,782.60.  All claims against Mr. Younger are **DISMISSED with prejudice**.  Final judgment shall issue accordingly.

Date: 11/20/2020

*Jane Magnus-Stinson*
Hon. Jane Magnus-Stinson, Chief Judge
United States District Court
Southern District of Indiana

**Distribution via ECF only to all counsel of record**

**Distribution via U.S. Mail to:**

Green Square Company, LLC
c/o Peltan Law, PLLC
128 Church Street
East Aurora NY 14052

Joey M. Younger
389 Parkside Avenue
Buffalo NY 14216